## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN ESCHBACH, | : Civil No. 1:24-CV-2256 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

## I.  Introduction

Dawn Eschbach filed an application for disability insurance benefits and supplemental security income on November 24 and December 15, 2021.  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Eschbach was not disabled from her alleged onset date of April 29, 2021, through the date of the ALJ's decision, February 1, 2024.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

Eschbach now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

Dawn Eschbach filed for disability insurance benefits and supplemental security income, alleging disability due to chronic obstructive pulmonary disease ("COPD")/asthma, pain and swelling in her right knee, arthritis, high blood pressure and cholesterol, sleep apnea, a learning disability, depression, and anxiety. (Tr. 79). Eschbach was 49 years old at the time of her alleged onset of disability, had at least a high school education, and had no past relevant work. (Tr. 32-33).

The medical record regarding Eschbach's impairments[2] revealed the following: prior to the alleged disability period, Eschbach treated at Geisinger in December of 2020, complaining of right hip and knee pain. (Tr. 574). She reported that the pain was aggravated by walking up and down stairs, as well as rising from a seated position. (*Id.*). A physical examination revealed an antalgic gait, mild pain and tenderness, and intact motor strength. (Tr. 577). X-rays indicated mild to moderate degenerative changes. (Tr. 578). She was diagnosed with arthritis, and it was recommended that she receive an injection and treat with physical therapy. (*Id.*).

In October of 2021, Eschbach began treating at Physicians Health Alliance, where she reported a history of migraines, anxiety and depression, GERD, hypertension, hyperlipidemia, and asthma. (Tr. 356). Treatment notes indicate her conditions were stable, and she denied shortness of breath at this visit. (Tr. 357). On examination, Eschbach ambulated normally, her breath sounds were normal, she had good air

---

[2] Because Eschbach's appeal focuses primarily on her physical impairments, we accordingly limit our discussion of the medical records to records involving the plaintiff's physical impairments.

movement, and she exhibited some tenderness and limited musculoskeletal range of motion. (Tr. 358).

Eschbach underwent an internal medicine examination in May of 2022 with Certified Registered Nurse Practitioner ("CRNP") Tara Cywinski. (Tr. 467-78). Eschbach reported her history of high blood pressure and diabetes, including that she did not check her blood sugars and was maintained on Metformin, and that she experienced swelling and peripheral neuropathy in her feet. (Tr. 467-68). She also reported her history of asthma and COPD, including experiencing shortness of breath, and CRNP Cywinski noted that Eschbach smoked a half pack of cigarettes per day. (Tr. 468). As to her activities of daily living, Eschbach stated that she did not cook often, could not stand for long periods of time, received help from family to perform household chores, and could perform personal care. (Tr. 469). A physical examination revealed a waddling gait, an inability to walk on her heels and toes, decreased breath sounds and wheezes, a positive straight leg raise test, stable and nontender joints, and mild decreased sensory deficit in her feet. (Tr. 470-71).

CRNP Cywinski filled out a medical source statement, opining that Eschbach could lift and carry up to 10 pounds occasionally; could sit for a half hour, stand for 20 minutes, and walk for 15 minutes in an 8-hour workday; could occasionally climb ramps and stairs and balance, but could never perform other postural activities; and could not walk a block or climb stairs at a reasonable pace. (Tr. 473-78). Around this time, Eschbach also received a right knee x-ray, which showed no evidence of acute fracture, dislocation, or destructive bony lesion. (Tr. 483).

In July of 2022, Eschbach consulted with a provider about her breathing issues, where she reported she had not seen a pulmonologist since 2014. (Tr. 492). She reported a decline in physical activity due to shortness of breath, which led to weight gain. (*Id*). Eschbach further reported that she smoked two packs of cigarettes per day, and the provider noted that a July 2021 chest x-ray showed no acute cardiopulmonary abnormality. (*Id*). On examination, Eschbach exhibited normal breathing sounds and no wheezing, rhonchi, or rales. (Tr. 493). The provider's assessment advised Eschbach that she was at high risk for lung disease due to her smoking and history of COPD, that

her inhaler usage was excessive, and that her obesity contributed to her shortness of breath. (Tr. 493-94). The provider ordered a full pulmonary workup. (Tr. 494). Eschbach followed up in October, complaining of feet swelling and difficulty breathing. (Tr. 512). On examination, she exhibited normal pulmonary effort, no respiratory distress, and no wheezing but had increased breath sounds. (Tr. 515). A chest CT showed "very severe obstructive ventilatory deficit, partially reversible with a marked and significant improvement after a bronchodilator." (Tr. 525).

Eschbach complained to a new provider in June of 2023 that she had muscle cramps while sitting and with exertion. (Tr. 593). She also reported shortness of breath. (Tr. 596). An examination revealed no edema, slightly diminished breath sounds, no wheezing or rales, normal pulmonary effort, and no respiratory distress. (Tr. 596-97). At a July 2023 follow up appointment, Eschbach exhibited slightly increased pulmonary effort and diminished breath sounds on examination. (Tr. 639).

It was against the backdrop of this record that an ALJ held a hearing on Eschbach's disability application on September 20, 2023. (Tr.

39-71). Eschbach and a Vocational Expert both appeared and testified at these hearings. (*Id.*). On February 1, 2024, the ALJ issued a decision denying Eschbach's application. (Tr. 15-38). The ALJ first concluded that Eschbach had not engaged in substantial gainful activity since her alleged onset date of disability, April 29, 2021. (Tr. 20). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Eschbach suffered from the following severe impairments: COPD/asthma; right knee osteoarthritis; diabetes mellitus; diabetic neuropathy; obesity; depression; anxiety; and post-traumatic stress disorder ("PTSD"). (Tr. 21). At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 22-26).

Between Steps 3 and 4, the ALJ then concluded that Eschbach:

[H]a[d] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

She should avoid unprotected heights and industrial machinery. Further she should avoid climbing ladders or scaffolds but may occasionally climb ramps or stairs. She can tolerate no more than occasional exposure to temperature extremes, humidity, or environmental irritants such as dusts, fumes, odors, and gasses. Additionally, she is limited to no

more than frequent overhead reaching with her bilateral upper extremities. She is able to understand, retain, and carry out simple instructions, and is limited to no more than occasional decision-making with respect to work related activities.

(Tr. 26).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Eschbach's reported symptoms. With respect to the medical opinion evidence regarding Eschbach's physical impairments, the ALJ considered CRNP Cywinski's May 2022 opinion and found it partially persuasive. (Tr. 31). The ALJ found that CRNP Cywinski's opinion, to the extent it limited Eschbach to light work with occasional postural limitations, was consistent with the overall record and CRNP Cywinski's examination. (*Id.*). However, the ALJ specifically found the standing, sitting, and walking limitations in this opinion, as well as the opinion that Eschbach could not walk a block or climb stairs at a reasonable pace, unpersuasive. (*Id.*). The ALJ reasoned that these extreme limitations were not consistent with the overall medical record or with CRNP Cywinski's examination. (*Id.*). He further noted that these limitations

were not supported by diagnostic testing during the relevant period, including pulmonary function testing, x-rays, and a chest CT, as well as the record evidence showing a normal gait and no use of assistive devices. (*Id.*). Additionally, the ALJ noted that these restrictions were not supported by Eschbach's own reported activities of daily living, which included walking around the county fair, caring for her grandchildren, and going for daily walks with a friend. (*Id.*).

The ALJ also considered the opinions of the state agency consultants, Dr. Bonita and Dr. Levandoski, and found these opinions partially persuasive. (Tr. 32). These providers opined that Eschbach could perform a range of light work, to include sitting, standing, or walking a total of 6 hours in an 8-hour workday, with occasional postural limitations and additional environmental limitations. (Tr. 82-85, 101-05). The ALJ found that these restrictions were supported by the longitudinal record, including diagnostic testing and imaging and clinical examination findings. (Tr. 32).

With respect to Eschbach's symptoms, the ALJ found that Eschbach's statements concerning the intensity, persistence, and

limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 27-29). Eschbach testified that she suffered from bone spurs and tendonitis in her feet, as well as swelling and breathing issues. (Tr. 51-52). She reported using a nebulizer at home 10 to 20 times per day, and that she had difficulty with stairs. (Tr. 52). She estimated that she could sit and stand for a few minutes at a time, and that she could walk 30 to 40 feet, and she reported that her daughter and husband help her with household chores. (Tr. 53-55).

The ALJ found Eschbach's testimony to be inconsistent with the objective clinical findings. (Tr. 27-29). The ALJ recounted the medical evidence, including examination findings regarding Eschbach's shortness of breath and lower extremity pain. (Tr. 28). The ALJ noted that there were some abnormal findings in the record, such as the November 2022 pulmonary test that revealed severe obstructive ventilatory deficit and clinical examination findings of tenderness and decreased range of motion. (*Id*.). However, the ALJ contrasted these findings with the benign findings during the relevant period, such as the October 2022 CT scan of her lungs, which was normal, and the clinical findings of no edema

and normal ambulation. (*Id.*). He further considered Eschbach's activities of daily living, including her own reports that she attended the county fair in 2021 and 2022, and her report in 2023 that she took daily walks with a friend. (*Id.*). The ALJ reasoned that while none of the activities were dispositive, and that Eschbach experienced some limitations in her ability to perform daily activities, the evidence as a whole indicated that Eschbach could perform a range of work within the RFC on a sustained and continuous basis. (Tr. 28-30).

Having made these findings, the ALJ found at Step 4 that Eschbach had no relevant past work but found at Step 5 that Eschbach could perform the occupations of a garment bagger, lens matcher, and stencil inspector. (Tr. 33-34). Accordingly, the ALJ found that Eschbach had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 34).

This appeal followed. On appeal, Eschbach argues that the ALJ failed to perform a function-by-function assessment concerning her limitations in her ability to sit, stand, and walk in an 8-hour workday.

This case is fully briefed and is therefore ripe for resolution.  For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.  Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled

13

is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his

decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which

exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20

16

C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason,* 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason,* 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence

17

on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that

medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns*, 312 F.3d 113.

### C. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Eschbach argues that the ALJ failed to perform a function-by-function assessment of her limitations pursuant to SSR 96-8p, and relying on this court's prior decision in *Steinmetz v. Colvin*, Civ. No. 1:23-CV-2066, 2025 WL 36159

(M.D. Pa. Jan. 6, 2025), asserts that a remand is required.  As we will explain, this case is unlike *Steinmetz*, and the ALJ's decision is supported by substantial evidence.  Accordingly, we will affirm.

SSR 96-8p explains that the ALJ's "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and that the "function-by-function assessment [must be] based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 362207.  The ruling explains that the "RFC may be expressed in terms of an exertional category, such as light . . . [h]owever, without the initial function-by-function assessment . . .  it may not be possible to determine whether the individual is able" to do either past work or other work available in the national economy.  *Id.*  The ruling further explains this is because "a failure to first make a function-by-function assessment . . . could result in the adjudicator overlooking some of an individual's limitations or restrictions."  *Id.*  That ruling also identifies that when discussing "exertional capacity," there are seven areas of strength to be considered—sitting, standing, walking, lifting,

carrying, pushing, and pulling. *Id.* Further, the ruling instructs that "[e]ach function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours.')" *Id.* Finally, the SSR explains that even if functions would be grouped together in a particular occupation, that does not change the function-by-function requirement of the evaluative process, as "it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately." *Id.*

In *Steinmetz*, we found that the ALJ's decision was not supported by substantial evidence because the ALJ's limitation of the plaintiff to medium work, with no additional discussion of standing and walking limitations, was not adequately explained. *Steinmetz*, 2025 WL 36159, at *8. In that case, the ALJ was faced with several medical opinions, each detailing specific limitations regarding the plaintiff's ability to sit, stand, and walk. *Id.* The ALJ found these opinions persuasive but failed to include the limitations within and, additionally, failed to explain the omission of those limitations. *Id.* Thus, we concluded that the ALJ's decision was not supported by substantial evidence because it did not set

forth an adequate explanation for omitting limitations the ALJ found persuasive. *Id.*

This case differs from *Steinmetz* in a meaningful way. Here, the ALJ found CRNP Cywinski's opinion partially persuasive but explicitly discounted her extreme sitting, standing, and walking limitations. (Tr. 31). The ALJ gave a thorough explanation for discounting these limitations:

> Moreover, the indication that the claimant is limited to sitting a half hour, standing 20 minutes, and walking 15 minutes, as it eliminates the claimant from performing substantial gainful activity, is not consistent with the longitudinal record or supported by her own examination. Notably, when the record is considered, specifically the November 2022 pulmonary function testing noting a severe obstructive ventilatory defect; the right knee x-ray from December 2020; her diabetes with bilateral lower extremity edema; and her obesity, the record supports that the claimant is able to perform light work with postural and environmental limitations. That said, considering the July 2021 chest x-ray; the October 2022 CT of her lungs; clinical examinations noting no atrophy; no ulcers; no wheezing, rales, or rhonchi; no use of assistive devices to ambulate, and aside from Nurse Cywinski's examination noting a waddling gait, the longitudinal record noting a normal gait, the greater limitations are not supported.

(*Id.*).

Thus, unlike in *Steinmetz*, where the ALJ found certain opinions persuasive but failed to include or explain the omission of limitations within those opinions, the ALJ here explained at length why he omitted CRNP Cywinski's sitting, standing, and walking limitations. The ALJ referenced the objective medical record, CRNP Cywinski's examination findings, and Eschbach's reported activities of daily living to support his reasoning that those extreme functional limitations were not warranted, and that Eschbach could perform work within the parameters of the light work RFC. Thus, because the ALJ considered Eschbach's sitting, standing, and walking limitations in crafting the RFC, we conclude that the decision satisfies the requirements of SSR 96-8p. *See e.g.*, *Northrup v. Kijakazi*, 2022 WL 889968, at *5 (M.D. Pa. Mar. 24, 2022) (finding substantial evidence supported the ALJ's decision where the decision "demonstrated consideration of [the plaintiff's] [] limitations[.]"); *Glass v. Comm'r of Soc. Sec.*, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) (affirming the ALJ's RFC determination because "the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step

four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.").

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.


Submitted this 22nd day of July 2025.


_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge

24